FLORENCE WILLS ET AL., Dependents of ARTHUR NAT WILLS, Appellants, v. BERBERICH'S DELIVERY COMPANY, Employer, and MASSACHUSETTS BONDING & INSURANCE COMPANY, Insurer.—98 S. W. (2d) 569.

Division Two, November 17, 1936.*

*NOTE: Opinion filed at May Term, 1936, August 20, 1936; motion for rehearing filed; motion overruled at September Term, November 17, 1936.

*Edw. C. Friedewald* for appellants.

*Leahy, Walther, Hecker & Ely* for respondents.

WESTHUES, ·C.—This case originated with the Workmen's Compensation Commission, where appellants filed a claim, seeking compensation for the death of Arthur N. Wills. The referee, who heard the case, allowed the claim, and on review before the whole commission two members thereof approved it, while the other members dissented. On appeal to the Circuit Court of the City of St. Louis the award was set aside and the case remanded to the commission on the ground that the commission had erroneously excluded competent material evidence. From that judgment the claimants, appellants here, appealed.

The claimants are the widow and three children, dependents of Arthur Nat Wills, deceased. The total amount allowed by the commission was in excess of $8000. The defendants denied liability, hence the amount in dispute vests this court with appellate jurisdiction. The only disputed question in the case was whether the death of Wills was the result of injuries sustained in a fall while at work for the Berberich Delivery Company. Wills had been employed as a chauffeur, by the delivery company, for a number of years. On Saturday, the 27th day of May, 1933, while repairing the roof of a delivery truck at the company's garage, he fell and sustained severe and painful injuries to his left elbow and shoulder. Wills, at the time, had a small boil on the left side of his face. He was treated for his injuries and visited the doctor at his office for several days, but by Wednesday of the following week his condition became such that he was continuously confined to his bed. The infection, which had been confined in the boil, began to spread, finally resulting in septicemia from which he died on Saturday, just a week after his fall. It was the claimants' contention that the injuries resulting from the fall caused the infection to spread, and therefore compensation should be allowed. It was the contention of the defendants that

the injuries sustained did not have any connection with the infection spreading, or the death of Wills, and therefore no liability existed.

To sustain their contention the defendants, respondents here, offered to introduce in evidence a written statement, made and signed by Wills, wherein he stated that he had not sustained any injuries to his face by the fall. The defendants also offered to prove, by a witness, a physician who treated deceased, that the deceased had made statements to that effect. Upon objection, made by appellants, the referee excluded this evidence. The circuit court held that the evidence was material and admissible, and therefore reversed the order of the commission and remanded the case for further consideration. We are of the opinion that the judgment of the circuit court must be affirmed.

█ The basis of the objection to the testimony was that since Wills was dead and not there to refute such evidence it was inad-. missible. That rule applies where one of the parties to a contract is dead. The law seals the lips of one party to a contract where death has sealed the lips of the other party. That rule, however, does not apply to a situation as we have here. Evidence of statements made against interest may be shown even where the party who is alleged to have made them, is dead. In this case the physician was not a party to any contract with the deceased and under the Compensation Law was a competent witness in the case. The evidence should have been admitted. This has been the rule since the early cases. [Wynn v. Cory, 48 Mo. 346, l. c. 348; Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311, l. c. 342, 235 S. W. 435; Wagner v. Binder, 187 S. W. 1128, l. c. 1155.] In the case of Greinke v. City of Chicago, 85 N. E. 327, l. c. 330, the Supreme Court of Illinois said:

"The declarations of an injured party as to his physical condition, brought about as a result of injury, are self-serving, and, at the best, hearsay evidence. Statements, however, made by an injured party, which form a part of the *res gestae, or those* made to his physician during treatment, constitute an exception to the general rule, and are admitted by reason of the fact that he will not be presumed to prevaricate at the very instant of his injury *or while he is stating his physical condition to a physician from whom he expects and hopes to receive medical aid. . . .*"

The evidence offered and rejected should have been admitted and considered by the commission in connection with the other facts proven in the case. Appellants cite the cases of Jackson v. Curtiss-Wright Airplane Co., 334 Mo. 805, 813, 68 S. W. (2d) 715; Crutcher v. Curtiss-Robertson Airplane Co., 331 Mo. 169, 52 S. W. (2d) 1019, and other cases. They quote the following from the Jackson case:

"The proceedings before the Compensation Commission are prescribed by a statute, Section 3349, Revised Statutes 1929 (Mo. Stat. Ann., sec. 3349, p. 8283), to be informal and without regard to the technical rules of evidence. While incompetent evidence will not support an award, Woods v. American Coal & Ice Co. (Mo. App.), 25 S. W. (2d) 1. c. 146 (4), its admission does not justify setting aside an award in a case where there is substantial, competent evidence to support it."

The distinction between admitting hearsay evidence, or incompetent evidence, and excluding material competent evidence, is so apparent that we need not discuss the question. In the cases cited it was pointed out that the Compensation Commission need not follow the technical rules on the law of evidence, and also that the admission of incompetent evidence would not justify setting aside an award if sufficient material competent evidence was introduced to support the award. But that does not mean the commission may reject competent material evidence offered by either party.

Respondent, however, argues that there was no competent evidence introduced to support appellants' claim, therefore, the case should be remanded to the commission with instructions to enter an award of no compensation. In this we believe respondents are in error. The wife of appellant testified that the deceased had a scratch on the left side of his face after the fall; that the boil had been dressed by a physician on the day of the accident. Another witness testified that he noticed an abrasion on the left side of deceased's face, which was not there prior to the accident. The medical experts seem to agree that trauma to an area that is infected, for example a boil, might break the defense barriers surrounding the infected area and cause a spreading of that infection. A medical expert, testifying for the defendants, made the following statements:

"There is no telling when the poison enters the blood stream and the doctor is up against it—sometime to do it any good. Injury or trauma to an area already infected has a very serious consequence on that infected area. And may cause the spread of that infection into the blood stream, causing blood poisoning. Depending on the trauma. Any blow if it caused more than just the effect on the skin. Medically, there is no way of determining how much damage is done by trauma to the tissues underneath the skin. You can't tell how far the tissues are broken down when the infection gets into the blood stream."

Another physician, a witness for defendants, testified on cross-examination as follows:

"The natural resistance of the patient has a great bearing on whether or not the spread of the infection takes place.

"If a man sustains a fall and is in shock. They get in shock—they get it and come out of it or stay in it; they don't take it in installments. He was a sick man if he was in shock. If he's sick his resistance is lowered no matter what the cause.

"By Mr. Hecker:

"Q. An infection of that kind would have a tendency to lower the resistance? A. Yes.

"It is a fight between the resistance and the strength of the patient. If the patient is stronger he gets well; if the infection is stronger, he gets septicemia and dies."

The commission was also authorized to take into consideration the fact that deceased had been able to perform his daily labors prior to the fall and that immediately thereafter he became ill; that the infection began noticeably to spread within two or three days. While the condition of the elbow and shoulder greatly improved, as per the evidence of the doctor, the infection became worse from day to day. The abrasion on the face, of which there was evidence, may have been the result of a sufficient blow to break the protecting tissue surrounding the infection and yet, for the time being, of little consequence as compared with the pain at the elbow and shoulder. Therefore, it might not have been mentioned by the deceased, when asked about his injuries.

It is well settled that liability is created under the Compensation Law if an injury aggravates an already weakened condition and death results. See Harder v. Thrift Const. Co. (Mo. App.), 53 S. W. (2d) 34, l. c. 37 (8), where the Court of Appeals stated the rule thus:

"Generally speaking, the rule is that the act contemplates latent or dormant ailments; that the existence of a disease which does not impair the employee's ability to work will not prevent a recovery if the accidental injury accelerates or aggravates such disease to a degree of disability or of death; and that an actual aggravation of an existing infirmity caused by accident arising out of and in the course of the employment is compensable, even though the particular accident would have produced no such result in the case of a normal and healthy individual."

Numerous cases from other jurisdictions will be found cited in the opinion of the Court of Appeals in support of the rule there announced.

The judgment of the circuit court is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Westhues, C., is adopted as the opinion of the court. All the judges concur.